UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



----------------------------------------------------------------X

J.H. SHIPPING CO. LTD.,

                   Plaintiff,

    - against -

VICTORY SHIPPING SDN BHD and
EMERALD INTERNATIONAL MARITIME SA
a/k/a EMERALD INTL M S A,

                 Defendants.

----------------------------------------------------------------X

**JUDGE CHIN**

**08 CV 0229**

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, J.H. SHIPPING CO. LTD. (hereafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy, and Lennon, LLC, as and for its Verified Complaint against the Defendants, VICTORY SHIPPING SDN BHD ("Victory") and EMERALD INTERNATIONAL MARITIME SA a/k/a EMERALD INTL M S A ("Emerald")(collectively referred to as "Defendants"), alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law.

3.     Upon information and belief, Defendant Victory, was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and

was at all material times the disponent Owner of the motor vessel "KRYMCHAKHLAR" (hereinafter the "Vessel").

4.      Upon information and belief, Defendant Emerald was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was, and still is, at all material times the alter-ego of Defendant Victory.

5.      By a charter party dated March 6, 2007, Victory chartered the Vessel to the Plaintiff for approximately six months at the hire rate of $13,950 per day. *See March 6th Charter Party annexed hereto as Exhibit "1."*

6.      Pursuant to an Addendum dated July 9, 2007, which incorporated the terms of the above charter party, Plaintiff and Victory agreed to extend the charter for another six months, in which the hire rate would be increased to $17,100.00 per day for this additional period. *See Addendum annexed hereto as Exhibit "2."*

7.      Thus, taking together the March 6th charter party and the July 9th addendum, Plaintiff's charter of the Vessel was scheduled to conclude on approximately April 7, 2008.

8.      On or about August 9, 2007, Victory put the Plaintiff on notice that it would unlawfully and prematurely withdraw the Vessel on or about October 3, 2007 in breach/repudiation of the Addendum. *See Letter from Victory admitting that it repudiated the Addendum and Letter confirming that Vessel must be returned on October 3, 2007 annexed hereto as Exhibits "3"and "4" respectively.*

9.      The Plaintiff therefore became entitled to take action in anticipation of the wrongful repudiation of the charter party and/or in respect of the wrongful refusal on the part of Victory to accept further orders for the Vessel.

10.    Plaintiff then reserved its rights to claim all damages from Victory's non-performance and/or repudiation of the charter party contract and/or Addendum. *See Letter reserving rights annexed hereto as Exhibit "5."*

11.    In order to resolve the dispute, Plaintiff requested that Victory either (1) provide a substitute vessel with similar specs at the same daily hire rate for the duration; or (2) compensate Plaintiff for its damages.

12.    Victory did not provide a substitute vessel or compensate Plaintiff for its damages.

13.    However, Victory was aware that Plaintiff had fixed the Vessel for another voyage via the Indian Ports to China, whose voyage duration would exceed that provided for in the original charter party contract dated May 6th.

14.    Thus, it was agreed between the Plaintiff and Victory that the Vessel could complete one last voyage from India to China on charter to Plaintiff, however, the hire rate would be increased after October 3, 2007 (the date on which Victory requested redelivery of the Vessel) to $21,000.00 per day. *See Agreement between Plaintiff and Victory dated September 21, 2007 annexed hereto as Exhibit "6."*

15.    In the Agreement, Plaintiff reserved its rights to claim all damages whatsoever resulting from Victory's non-performance. *See Exhibit "6."*

16.    On October 10, 2007, disputes arose between the parties regarding Plaintiff's alleged failure to pay hire to Victory. And, as a result Victory wrongfully withdrew the Vessel. *See Victory's Notice of Withdrawal annexed hereto as Exhibit "7."*

17.    Plaintiff maintains that this withdrawal was wrongful as all the deductions from hire were proper and were made on account of redelivery of bunkers and/or by way of set off

3

damages for wrongful repudiation of the balance period of the charter party by Victory. *See Plaintiff's reservation of rights dated October 31, 2007 annexed hereto as Exhibit "8."*

18.     Victory then agreed to enter into a new charter with Plaintiff which would allow Plaintiff to complete the last voyage to China as originally conceived under the Agreement dated September 21, 2007.

19.     Pursuant to a charter party dated November 1, 2007, Victory chartered the Vessel to Plaintiff for one voyage to China. *See Charter Party dated November 1, 2007 annexed hereto as Exhibit "9."*

20.     The terms of the original May 6th charter party were incorporated therein.

21.     Victory and Plaintiff executed the November 1st charter party "without prejudice to both parties' rights to bring claims arising under or out of the terminated charter party."

22.     As a result of Victory's repudiation and/or breach of the Addendum, as best as may be reasonably approximated, Plaintiff sustained damages in the total principal amount of $1,558,800.00, exclusive of interest, arbitration costs and attorney's fees. The damage calculation is set forth in the following paragraphs.

23.     Had Victory not repudiated the Addendum, the Vessel would have remained on charter to Plaintiff until April 8, 2008 at the hire rate of $17,100.00 per day.

24.     However, the Vessel was withdrawn and returned to Victory on December 12, 2007.

25.     Plaintiff claims the difference between the contract rate for the Vessel and the market rate for the remaining period under the Addendum.

26.     The average market rate for the period covered by the Addendum was not less than $28,000.00 per day.

4

27.    On this basis Plaintiff's loss is ($28,000.00 – $17,100) per day x 123 days = $1,340,700.00.

28.    Furthermore, Plaintiff maintains that it is entitled to recover the difference in hire between the Addendum rate and the September 21st Agreement/ November 1st Charter Party rate, which it paid during the last voyage from to India to China.

29.    As stated above, the hire rate under the May 6th charter party was $13,950.00 per day.

30.    The Addendum hire rate of $17,100.00 was to begin to apply on September 23, 2007.

31.    Pursuant to the Agreement/November 1st Charter Party, the hire rate for the last voyage was to increase to $21,000.00 on October 3, 2007.

32.    The last voyage was completed on December 12, 2007.

33.    Thus, the difference in hire from October 3, 2007 until December 12, 1007 was ($21,000.00-$17,100) x 64 days = $249,600.00

34.    Pursuant to the Agreement dated September 21, 2007, from September 23, 2007 until October 3, 2007, Plaintiff received the benefit of the initial May 6th charter rate of $13,950.00, when it would originally have paid the Addendum hire rate of $17,100.00 during that time period.

35.    Thus, Plaintiff has deducted the following savings in hire from the damages owed by Victory: ($17,100.00-13,950.00) x 10 days = $31,500.00.

36.    Taking together the difference in hire for the two relevant periods (October 3, 2007 to December 12, 2007 and December 12, 2007 to April 8, 2008) and deducting the savings

from September 26, 2007 to October 3, 2007, Plaintiff's principal claim, excluding interest, reasonable attorneys fees and arbitration costs is approximately $1,558,800.00.

37. Pursuant to the March 6th charter party, the Addendum dated July 9th, the Agreement dated September 21st, and the subsequent charter party dated November 1st, all disputes arising thereunder are to be submitted to arbitration in London with English Law to apply.

38. Plaintiff is preparing to commence arbitration to recover its damages under the above contracts.

39. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration pursuant to English Law. As best as can now be estimated, Plaintiff intends to claim the following amounts:

| | | |
|---|---|---|
| A. | Principal claim: | $1,558,800.00 |
| B. | Estimated interest on claims: 3 years (2007-2010) at 6.5%, compounded quarterly | $332,659.73 |
| C. | Estimated attorneys' fees: | $250,000.00 |
| D. | Estimated arbitration costs/expenses: | $50,000.00 |
| **Total** | | **$2,191,459.73** |

40. Defendant Victory is the alter-ego of Defendant Emerald because it dominates and disregards Emerald's corporate form to the extent that Victory is actually carrying on Emerald's business and operations as if the same were its own, or vice versa.

41. Upon information and belief, Defendant Emerald has no separate, independent identity from Defendant Victory.

6

42.    Upon information and belief, Defendant Victory uses Defendant Emerald as its as a "paying agent" or "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations and in particular its vessel charters.

43.    It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

44.    Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

45.    Upon information and belief, Victory directs its creditors to makes payments on its contracts to Emerald where Emerald has absolutely no contractual relationship to Victory's creditors.

46.    Upon information and belief, Plaintiff made approximately 16 payments to Emerald where Emerald had no relationship to the underlying contract.

47.    Furthermore, upon information and belief, another company, Janhja Marine Co. Ltd., chartered two vessels, VINASHIN SUN and VINASHIN SKY, to Defendant Victory, and all hire payments made thereunder were remitted by Emerald.

48.    In its invoices, Victory specifies that its nominated banking details are as follows:

The HongKong & Shanghai Banking Corporation
Singapore
SWIFT: HSBCSGSG
Credit to: EMERALD INTERNATIONAL MARITIME SA
USD A/C No. 260 -463161 -178

49.    By virtue of the foregoing, Emerald is properly considered a party to the subject contract as the alter ego and/or paying/receiving agent of Defendant Victory.

7

50.    In the further alternative, Defendants are partners and/or joint venturers such that Emerald is now, or will soon be, holding assets belonging to Victory, or vice versa.

51.    In the further alternative, Defendants are affiliated companies such that Emerald is now, or will soon be, holding assets belonging to Victory, or vice versa.

52.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

53.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia,* any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear ansd answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims,

8

attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$2,191,459.73** belonging to, due or being transferred to, from, or for the benefit of the Defendants, including but not limited to such property as may be held, received or transferred in Defendants' name(s) or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That the Court recognize and confirm any arbitration award or judgment rendered on the claims had herein as a Judgment of this Court;

D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

F.     That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, NY
        January 11, 2008

The Plaintiff,
J.H. SHIPPING CO. LTD.

By:

Patrick F. Lennon (PL 2162)
Nancy R. Peterson (NP 2871)
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building

9

420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050
Fax (212) 490-6070
pfl@lenmur.com
nrp@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
                  )    ss.:    City of New York
County of New York )

1.    My name is Nancy R. Peterson.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          January 11, 2008

Nancy R. Peterson

11

EXHIBIT "1"

# Time Charter

### GOVERNMENT FORM
#### Approved by the New York Produce Exchange
November 6th, 1913–Amended October 20th, 1921 ; August 6th, 1931 ; October 3rd, 1946

1. **This Charter Party,** made and concluded in Chennai, India .........on 6ᵀᴴ day of MARCH 2007.................................................
2. Between...VICTORY SHIPPING SDN. BHD. MALAYSIA........................................................................................
3. Timecharter Owners of the good Cambodia Flag, Built 1980 steamship/Motorship "Krymchakhiar"........
   of.......................................................
4. of .16631. tons gross register, and .10000. tons net register, having engines of ....................... indicated hours power
5. and with hull, machinery and equipment in a thoroughly efficient state and appearance, and classed.... I.R.S....................................
6. at...... of about 35060/34027 cubic meter grain/bale capacity available for cargo, and about 26,814 metric tons of 2240-lbs.
7. deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,
8. allowing a minimum of fifty tons) on a draft of .......feet ....... inches on ...... Summer ...... freeboard, inclusive of permanent bunkers,
9. which are of the capacity of about. tens of fuel, and capable of steaming, fully laden, thoughout the entire period **of** this Charter party under good weather.
10. conditions about 10.5 knots on a consumption of about 25 MT IFO 180 CST plus about 2.5 MT MGO of best Welsh coal best grade fuel oil best grade Diesol oil,
11. now. .Trading, See also Clause 54 and description as attached in Clause 29....................................................................
12. .......... and JH SHIPPING CO. LTD.,....Charterers of the City of SEOUL, KOREA **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
13. about 4 to 6 months period (15 days more or less in charterers option) trading always **via** safe berth(s)/safe port (s)/safe anchorage(s) always within IWL, with lawful and permissible cargo,
14. in/out geographical rotation. within below mentioned trading limits
15. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
16. the fulfillment of this Charter Party. Acceptance of delivery by Charterers shall not constitute any waiver of Owners obligation hereunder.
17. Vessel to be placed at the disposal of the Charterers, at dropping last outward sea pilot station ISP SINGAPORE
18. Any time day night Sunday and Holidays included
19. in such dock; or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as
20. the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 6. Vessel on her delivery to be
21. ready and fit in every way to receive and carry any permissible cargo according to international regulations and Charter Party terms conditions and exceptions and to be maintained in such condition during the entire period of this Charter to receive cargo with clean swept holds—and tight, staunch, strong and in every way fitted for ordinary cargo service, having water ballast, winches derricks and
22. donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the derricks winches at one and the same
23. time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
24. dies, including petroleum or its products, in proper containers, excluding ... See Clause 52...........................................................
25. (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,
26. all necessary fittings and other requirements to be for account of Charterers); in such lawful trades, between safe port and/or ports in British North
27. America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
28. Mexico, and/or South America......World wide trading within IWL, See Clause 48........................................................... and/or Europe
29. and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
30. October 31st and May 15th, Hudson Bay and all unsafe ports ; also excluding, when out of season, White Sea, Black Sea and the Baltic
31. ......................................................................................................................................................
32. ......................................................................................................................................................
33. ......................................................................................................................................................
34. as the Charterers or their Agents shall direct, on the following conditions :
35. 1. That the Owners shall provide and pay for all provisions, wages, and consular shipping and discharging fees including agency fees if any of the Crew. shall pay for the
36. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
37. the vessel in a thoroughly efficient state in hull, cargo spaces, machinery and equipment for and during the service.
38. 2 That whilst on hire the Charterers shall provide and pay for all the fuel and marine gas oil except as otherwise agreed, Port Charges, Customary Pilotages, Agencies, including inward/outward freight tax, Commissions, seaways/canals/river tolls,

stevedoring charges,

39. Consular Charges, except those pertaining to the Crew   and  flag of the vessel and all other usual expenses except those before stated, but when the vessel puts into

40. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

41. illness of the crew or cargoes carried prior to delivery to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

42. charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

43. of six months or more.

44. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

45. Owners to allow them the use of any dunnage, and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

46. for dunnage, they making good any damage thereto.

47. 3. That the Charterers, at the port of on delivery, and the Owners, at the port of on re-delivery, shall take over and pay for all fuel and diesel oil remaining on

48. board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ............., tons and not more than

49. ...................... tons and to be re-delivered with not less than ...................... tons and not more than .....as per Clause 54.......... tons.

50. 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of USD 13,950 DIOT in ...................................

51. United States Currency. per ton on vessel's total deadweight carrying capacity, including bunkers

52. and stores, on summer freeboard, per Calendar Month, commencing on and from the day of her delivery, as aforesaid, and at

53. and after the same rate for any part of a  month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

54. wear and tear excepted, to the Owners (unless lost at)......see Owners (unless lost at)......see Clause 89.................................................

55. unless otherwise mutually agreed. Charterers are to give Owners not less than 30/15/10/7/5/3/2/1  days

56. notice of vessels expected date of re-delivery, and probable port.

57. 5. Payment of said hire to be made to Owners nominated banking details in New York in cash in United States Currency, semi-monthly every 15 days (fifteen days) in advance net free of bank charges to Owners, and for the last half month or

58. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

59. due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

60. hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

61. terers without prejudice to any claim they (the Owners) may otherwise have on the Charterers. 1ST HIRE + VALUE OF BOD TB PAID WITHIN 3 NEW YORK BANKING DAYS AFTER VESSELS DELIVERY AND RELEVANT INVOICES BY E-MAIL OR FAX (THRU BROKERS) CHTRS HV OPTN TO DEDUCT BOD VALUE AND USD 500 PER PORT AS OWS EXPS FM LAST SUFFICIENT HIRE PAYMENTS (OWNRS EXPENSES SUBJECT TO OWNRS APPVL WHICH TO BE SUBSTANTIATED WITH RELEVANT VOUCHERS DULY SIGNED BY MASTER). (CHRTRS NOT TO DEDUCT OWNRS EXPENSES AND IF ANY SAME WILL BE FUNDED BY OWNERS IN ADVANCE) Time to count from 7 a.m. on the working day

62. following that on which written notice of readiness has been give to Charterers or their Agents before 4 p.m., but if required by Charterers, they

63. to have the privilege of using vessel at once, such time used to count as hire.  See Clause 30

64. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, subject to Owners approval by the Charterers or their Agents, at their discretion subject

65. to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances.

67. 6. That the cargo or cargoes be laden and/or discharged in any safe dock or at any safe wharf or safe place in port or elsewhere that Charterers or their Agents may

68. direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessel to safely

69. lie aground.

70. 7. That the whole reach of the Vessel's Hold, Decks, and usual place of loading (not more than she can reasonably stow and carry), also

71. accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

72. tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers

73. paying Owners ..... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

74. incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.

75. 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

76. boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

77. agency; and Charterers are to load, stow, and trim, lash, unlash, tally and discharge the cargo at their expense under the supervision and direction of the Captain and perform all cargo handling, who is to sign Bills of Lading for

78. cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

79. 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

80. receiving particulars of the complaint, investigate the same, and, if necessary, and practical make a change in the appointments.

81. 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

82. with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

83. rate of $10.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

{PAGE   }

84. Clerks, Stevedore's Foreman, etc., Charterers paying USD 1,300 lump sum per month prorate for cables/victualling/entertainment-at-the current rate per meal, for all such victualling.

85. 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

86. Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

87. terers, their Agents or Supercargo, when required, with a true copy of deck and engine logs in English daily Logs, showing the course of the vessel

88. and distance run and the consumption of fuel.

89. 12. That the Captain shall use diligence in caring for the ventilation of the cargo.

90. 13. That the Charterers shall have the option of continuing this charter for a further period of .

91. ................................................................................................................................

92. on giving written notice thereof to the Owners or their Agents ...... days previous to the expiration of the first named term, or any declared option.

93. 14. That if required by Charterers, time not to commence before 8TH MARCH 2007 00:00 hrs local time and should vessel

94. not have given written notice of readiness on or before but not later than 4 p.m. 17TH MARCH 2007 24:00 hrs local time Charterers or

95. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

96. 15. That in the event of the loss of time from deficiency and/or default and/or strike of officers and crew whether due to labour dispute or other deficiency of men or stores, fire, breakdown or damages to hull, machinery or equipment unless caused by Charterers or their agents and/or servants as ascertained by Lloyds equivalent independent surveyor.

97. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause whatsoever

98. preventing the full working of the vessel, the payment of hire shall cease for the actual time thereby lost and directly related expenses may be deducted from the hire; and if upon the voyage the speed be reduced by

99. defect in or breakdown of any part of her hull, machinery or equipment, the actual time so lost, and the cost of any extra fuel consumed in consequence

100. thereof, and all extra direct expenses shall be deducted from the hire subject to Owners prior approval..

101. 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

102. returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

103. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

104. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessel in distress, and to deviate for the

105. purpose of saving life and property.

106. 17. Arbitration as per Clause 61. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,

107. one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the

108. purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

109. 18. That the Owners shall have a lien upon all cargoes, and all sub-freights and sub hires for any amounts due under this Charter, including General Aver-

110. age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

111. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

112. might have priority over the title and interest of the owners in the vessel.

113. 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

114. Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

115. 1994 and revised in London, York-Antwerp Rules 1924, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these

116. Rules, according to the laws and usages of the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into

117. United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at

118. the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or

119. bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

120. or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if

121. required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the

122. carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the

123. place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in

124. United States money.

125. In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,

126. whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the

127. goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,

128. losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the

129. goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or

130. ships belonged to strangers.

131. Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder. See New Jason

Clause as attached.

132. 20. Fuel/Diesel used by the vessel while off hire, also for cooking-condensing-water, or for grates and stoves to be agreed to as to quantity, and the
133. cost of replacing same, to be allowed by Owners..
134. 21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
135. convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in every six months, reckoning from
136. time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.
137. Owners will not be responsible for bottom fouling resulting from a prolonged stay in port/anchorage and/or idling for a running period
138. under Charterers' arrangements and orders. Owners are not responsible for reduced speed due to fouling from a long port stay.
139. Dry docking only in the event of an emergency. ................................................................................................................................
140. ............................................................................................................................................................................................
141. 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks Cranes) capable of handling lifts up maximum capacity in accordance with description clause. to three tons, also
142. providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for
143. same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel sufficient lights as on board for all night work in all holds simultaneously. All winchmen/cranesmen to be provided and paid for by the Charterers. Watchmen ordered by Master to be for Owners account. All other watchmen including compulsory to be for Charterers account. lanterns and oil for
144. night work, and vessel to give use of electric light when so fitted, but any additional lights over these on board to be at Charterers' expense. The
145. Charterers to have the use of any gear on board the vessel.
146. 23. Vessel to work night and day, and Sundays and holidays, if required by Charterers, and all winches/cranes to be at Charterers' disposal during loading and discharging
147. steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,
148. dock hands and dockeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the
149. port or labour unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled cargo-handling gear, or insufficient power to operate same, the vessel is to be considered off hire to the extent that time is actually lost to the Charterers and Owners to pay for stevedore standby charges occasioned thereby up to a maximum of one shift only. Owners to pay for shore engine, or engines, in lieu thereof, if required by Charterers in which case vessel to remain on hire. See Clause 37
150. 24. It is also mutually agreed that this Charter is subject all the terms and provisions of and all the exemptions from liability contained
151. in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled " An Act relating to Navigation of Vessels,
152. etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clause, both
153. of which are to be included in all bills of lading issued hereunder :
154. U.S.A. Clause Paramount
155. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
156. 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
157. any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any terms of this bill of lading
158. be repugnant to said Act any extent, such terms shall be void to that extent, but no further.
159. Both-to-Blame-Collision-Clause
160. If the ship comes into collision with another ship as a result of the negligence of the other ship and any act neglect or default of the
161. Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
162. hereunder will indemnify the Carrier against all loss or liability to the other or non- carrying ship or her owners in so far as such loss
163. or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-
164. carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her
165. owners as part of their claim against the carrying ship or carrier. See Both to Blame Collision Clause as attached.
166. 25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
167. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
168. port or to get out after having completed loading or discharging. Trading always via ice free port(s) and vessel not to force ice or follow ice breaker(s). See also Clause 44.
169. 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
170. navigation of the vessel, acts of pilots and tugboats, insurance, crew, and all other matters, same as when trading for their own account.
171. 27. A commission of 1.25 per cent is payable by the Vessel and Owners to Exodus Chartering Services, India + 1.25 per cent is payable by Charterers to Sunhill Korea.
172. ............................................................................................................................................................................................
173. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
174. 28. An address commission of 2.5 per cent payable to..Charterers............. on the hire earned and paid under this Charter.

Additional Clauses 29 to 99, Conwartime, New Jason Clause, General Paramount Clause, Both to Blame and Collision Clause are all deemed to be fully incorporated in this Charter Party.

{PAGE }

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
### Charter party dated 6<sup>TH</sup> MARCH 2007.

29. (VESSEL DESCRIPTION).

M.V. KRYMCHAKHLAR (EX M.V. GOLDEN SUN)
BC, BLT 1980
CAMBODIA FLAG
CLASS: IRS
IMO NR 8015178
DWT 26.814 ON 10.42 M SSWD
GRT/NRT 16.631/10.000
LOA/BEAM 175.22/25.05 M
GRAIN/BALE 35.060/34.027 CBM
5/5 HO/HA, STEEL PONTOON HATCH COVERS
5 DERR X 15 TS
NOT AUS/EL FTTD
SPEED/CONS: LADEN ABT 10.5 KN ON 25 MT IFO (180 CST) + 2.5 MT MGO.
            BALLAST ABT 11.5 KN ON 22 MT IFO (180 CST) + 2.5 MT MGO
IN PORT (GEAR WORKING) SUMMER – 0.5 MT IFO + 3.5 MT MGO
                       WINTER – 1.8 MT IFO + 3.5 MT MGO
           (GEAR IDLE)  SUMMER – 0.5 MT IFO + 1.9 MT MGO
                       WINTER – 1.8 MT IFO + 1.9 MT MGO

ALL FIG ABT & WOG

1. ENGINE / BRIDGE, AFT:   YES
2. VESSEL IS STEEL FLOORED:   YES
3. OWNERS CONFIRM THAT VSL'S HOLDS ARE FREE FROM ALL OBSTRUCTIONS
   INCLUDING FRAMES / CONTAINER FITTINGS AND TANKTOP IS FLUSH AND FULLY
   SUITABLE FOR GRAB DISCHARGE:   YES
4. OWNER CONFIRM VSL CAN FULLY BALLAST, IF REQUIRED:   YES
5. VESSEL IS NOT CARGO BATTEN FITTED:   NOT FITTED
6. VSL IS A GEARED / SINGLE DECK / BULK CARRIER:   YES
7. GRAIN / BALE CAPAC IS IN UNOBSTRUCTED MAIN HOLDS ONLY: GRAIN/35 060
   BALE/34 027 CBMS
8. VSL HAS CLEAR UNOBSTRUCTED HOPPERED HOLDS THROUGHOUT WITH NO FRAMES
   EXTENDING DOWN TO TANKTOPS: YES
9. VSL IS EQUIPPED WITH AUSTRALIAN WWF LADDERS IN CARGO HOLDS:  NO
10. IS VSL FULLY FITTED LOGGER / FITTED WITH STANCHIONS –
    LASHINGS:   NO
11. IF STANCHIONS FITTED : NOT FTTD
12. CONFIRM VSL HAS APPENDIX  'B'   ;      NO
13. IN port consumption : Pls see in vsls desc
14. HATCH SIZES: No. = 19, 2 X 14, 4  Nos. 2,3,4,5 = 26, 3 X 18, 0
15. TYPE OF HATCHCOVERS  :   PONTOON
16. MAKE / TYPE OF GEAR AND WHERE SITUATED: PLS SEE IN VSL'S DESCR
17. BUNKER GRADES: FO = 180. DO – MGO
18. INDIVIDUAL HOLDS CAPACITY (CMTRS)
    GRAIN + BALE : No 1/4 322,7 / 4 046,6
                  No 2/7 905,3 / 7 792,9
                  No 3/7 729,9 / 7 528,5
                  No 4/7 697,2 / 7 516,8
                  No 5/7 404,9 / 7 232,9
19. OFFICIAL NUMBER :    0580239
20. DEPTH MOULDED :     14.0 MTRS
21. HEIGHT FROM TANKTOP TO TOP OF HATCHCOAMINGS  : 13,4 M
22. TPC  : AT SUMMER DRAFT   36,5 MT
23. NATIONALITY OF CREW AND OFFICERS / MASTER :  RUSSIAN
24. OWNERS AND MANAGERS FULL STYLE / ADDRESS AS FOLLOWS + MIC OPERATIONAL
MATTERS :   "DUNSINK TRADING LTD / P.O,Box 146, Road , Tortola , British & Virgin
Island
OWNERS: INTERNATIONAL BUSINESS COMPANY 'HOMETOWN INTERNATIONAL LTD' P.O. BOX 3161,
ROAD TOWN, TORTOLA, BRITISH VIRGIN ISLANDS. MANAGERS : JSC "SOVFRACHT", 4,
Rakhmanovskiy per. Marine House, Moscow 127994, Russia

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING" Charter party dated 6<sup>TH</sup> MARCH 2007 .

25.   T/C  OWNERS  (IF APPLIC) :  VICTORY SHIPPING SDN. BHD., MALAYSIA
26.   IMO  NO: 8015178
27.   PREVIOUS NAME :   mv " GOLDEN SUN "
28.   DATE OF  LAST NAME CHANGE  : 22.12.2005
29.   SINCE WHEN HAS VSL BEEN UNDER PRESENT OWNERSHIP ND
MANAGEMENT   : 22.12.2005
30.   WHERE BUILT :  Japan. NUMAKUMA
31.   CLASS :   I R S
32.   WINTER DWAT / DRAFT :  26 022 MT/10,20 M
33.   CONSTANTS EXCLUDING FRESHWATER : 630 MT
34.   DAILY FW CONSUMPTION, FW CAP, CAPACITY OF FW  EVAPORATOR(MT) :10
      /350 /NO
35.   MAXIMUM BUNKER CAPACITY IN FUEL AND MGO RESPECTIVELY (MT) : 945,0
      / 195,0
36.   HOLD DIMENSIONS PER HOLD (L X B X H) :

|        | LENGTH   | WIDTH FWD | WIDTH AFT | H       |
|--------|----------|-----------|-----------|---------|
| No. 1  | 19, 20 m | 7,0 m     | 20 , 40 m | 12 , 20 m |
| No. 2  | 26, 00 m | 16, 8 m   | 16 , 00 m | 12 , 80 m |
| No. 3  | 26, 00 m | 18, C m   | 18 , 00 m | 12 , 40 m |
| No. 4  | 26, 00 m | 19, 0 m   | 18 , 00 m | 12 , 40 m |
| No. 5  | 26 ,00 m | 19, 0 m   | 8 , 00 m  | 12 ,40 m |

37.   TANKTOP FLATFLOOR DIMENSION EXCL CORRUGATIONS PER HOLD ( L X B )

|       | LENGTH | WIDTH  | FWD | WIDTH AFT | AREA   m/2  |
|-------|--------|--------|-----|-----------|-------------|
| No 1  | 19,2 m | 7,0 m  |     | 20,4 m    | 276,5 m2    |
| No 2  | 26,0 m | 16,8 m |     | 18,0 m    | 436,0 m/2   |
| No 3  | 26,0 m | 18,0 m |     | 18,0 m    | 468,0 m/2   |
| No 4  | 26,0 m | 18,0 m |     | 18,0 m    | 468,0 m/2   |
| No 5  | 26,0 m | 18,0 m |     | 8,0 m     | 343,0 m/2   |

38. DISTANCE FROM FORE OF No. 1 HATCH TO AFT PART OF No.5   ( IE
    WORKING LENGTH )  :123,2 m
39. ARE THE HOLDS HOPPERED :   LOWER   B=3,43  m.H=5,15 m.  UPPER
    B=5,94 m.  H= 3,75 m.
40.   CO2 FITTED IN ALL CARGO HOLDS :  NO
41.   VENTILATION :  NO ELECTRICAL VENTILATION
42.   TANKTOP-DECK-HATCHCOVER STRENGTHS :  12,0/1,50/3,0 MT/SQ MTR
43.   IS VSL STRENGTHENED FOR HEAVY CARGOES , IF SO WHICH HOLDS MAY BE
      LEFT EMPTY : No.2 & No.4
44.   ADVISE DISTANCE FROM WATERLINE TO TOP OF HATCHCOAMING IN
      BALLASTED CONDITION INCLUDING AND EXCLUDING FLOODABLE HOLDS (PLS
      ADVISE WHICH): No 1/12,0  MIDSHIP/10,4  No 5/10,1 MTRS
45.   CONFIRM NO CENTERLINE BULKHEAD : YES
46.   CONFIRM VSL HAS NOT TRADED CUBA WITHIN THE LAST 180 DAYS : YES
      HOMEPORT : PHNOM - PENH
47.   CALL SIGN, TELEX, PHONE, FAX AND E-MAIL NUMBERS :XULS9/ INM C
      451595310 / 451595311
48.   GT/NT  - 16 631 MT / 10 000 MT
49.   S.P.S. - NAME AND CONTACT DETAILS OF THE COMPANY SECURITY OFFICER
      AND SHIP SECURITY OFFICER :
      COMPANY SECURITY OFFICER (CSO): VAZEOVV.I. TEL+7 9168145041
      (CSO) : CHERNYSHOVV.V. TEL+7 9031100455 SHIP SECURITY OFFICER
      (SSO): SIN 'YURIY
50.   VSL WILL BE IN CLASS  IRS Register AND TO BE A MEMBER OF IACS: NO
51.   VSL WILL BE FULLY PNI COVERED BY P N I CLUB  AND TO BE A MEMBER

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6ᵀᴴ MARCH 2007 .

OF THE INTERNATIONAL GROUP.    (NAME OF OWNERS F AND I CLUB
JSC 'INGOSSTRAKH') :    Fully P&I covered, but    JSC'INGOSSTRAKH', which is
not a member of the International group P&I Clubs.

52.    VSL HAS H+M INSURANCE COVERED WITH : "INGOSSTRAKH INSURANCE CO"
53.    H+M VALUE: USD 6 000 000.00
54.    VSL WILL BE MANNED IN ACCORDANCE WITH THE SAFE MANNING DOCUMENT
       ISSUED BY THE FLAG :  PHNOM-PENH
55.    VSL COMPLIES WITH STATUTORY AND CLASS REQUIREMENTS INCL. BUT NOT
       LIMITED TO LOAD LINE, SOLAS AND MARPOL: YES
56.    VSL TO BE ISM CERTIFIED: YES
57.    VSL TO BE ISPS CERTIFIED: YES
58.    ANY ACCIDENTS DURING LAST 24 MONTHS: NO
59.    LAST SPECIAL SURVEY :22.02.2006
60.    LAST DRYDOCK : 18.02.2007
61.    OWNERS CONFIRM VSL HAS NOT SUFFERED ANY GENERAL AVERAGE DURING
       PAST THREE YEARS:    YES
62.    OWNERS CONFIRM VESSEL IS NOT REGISTERED, OWNED OR CONTROLLED BY
       THE GOVERNMENT - OR THEIR NATIONALS - OF YUGOSLAVIA NOR SUBLET TO
       THEM AND
63.    THERE WILL BE NO YUGOSLAV CREW MEMBER ON BOARD THE SHIP DURING
       THIS CHARTER : YES

OWNRS GUARANTEE THAT VSLS HOLDS ARE TO BE CLEAR OF ANY FITTING/SUPER STRUCTURES
SUCH AS CARDECK CURTAIN PLATES, CNTR FITTING WHATSOEVER.

END.-

-ABOVE DETAILS ABOUT AND WOG.-

### 30. ANTI TECHNICALITY.
Referring to Lines 60 and 61, where there is any failure to make "punctual and
regular payment" due to oversight or negligence or error or omission of
Charterers' employees bankers or agents, Owners shall notify Charterers in writing
where upon Charterers will have three (3) New York banking days to rectify the
failure, where so rectified the payment shall stand as punctual and regular
payment failing which Owners shall have the right to withdraw the vessel from
service of the Charterers without prejudice to any claim Owners may have otherwise
on the Charterers under this charter party. Owners have the Liberty to withdraw
vessel without further notice if payment of hire has not been made within 3 New
York banking days after vessel's delivery at the same time reserving their rights
to suspend loading / discharging operations in the event of unpaid hire in which
case all time and expenses will be to Charterers account.

### 31. BILLS OF LADING
If required by the Charterers, the Charterers or their agents are hereby
authorised by the Owners to sign on Master's and/or Owners behalf Bills of lading
as presented in strict accordance with Mate's receipts without prejudice to this
Charter Party. Should Charterers not less then 24 hours before start of loading
require the master in writing about clean bills of lading Master must refuse
damaged cargo prior to acceptance on board or at least immediately after loading
any damaged items on board, immediately request sound replacement and clean Mate's
receipts are to be issued. In any case, Master / Owners / Vessel will not be
responsible for any damaged cargo.

### 32. ARREST/SEIZURE.
Should the vessel be arrested and/or seized during the currency of this Charter
party at the suit of any person having or purporting to have a claim against, or
any interest in the vessel or by any other default of the Owners, hire under this
Charter party shall not be payable in respect of any period whilst the vessel
remains under arrest only if such arrest affects loading, discharging operations
or otherwise delays the vessel (or prevents performance of the service next
required by the Charterers ) and the Owners shall reimburse to the Charterers any

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING" Charter party dated 6<sup>TH</sup> MARCH 2007.

direct, proven and duly supported by vouchers expenditure which they may incur under this Charter party in respect of any period during which by virtue of the operation of this clause no hire is payable unless such arrest is caused by actions of Charterers and/or their sub Charterers and/or their agents.

### 33. VESSEL DETENTION.

Should the vessel be seized and/or detained and/or geographically constrained in relation by any government or body (whether legally constituted or not) or by any persons acting out of a malicious, belligerent or political motive or as a result of any action by any such government body or persons, the vessel shall be off hire for all actual time thereby lost and fuel oil/diesel oil consumed and all port charges including all direct related expenses whilst off-hire for Owners account, unless vessel be seized and/or geographically constrained due to Charterers and/or sub-Charterers and/or their servants legal or illegal actions, trade and service in which case vessel to be on hire and all expenses arising there from to be for Charterers account.

### 34. DISCRIMINATION.

In the event of loss of time arising from government restrictions by reasons of vessel's flag or the terms and conditions by which members of the crew are employed or by any reason of Owners' operation or control, vessel to be off-hire and all direct expenses to be for Owners' account.

### 35. DEVIATION/DEFICIENCY.

That in the event of the loss of time from deficiency of men or stores and/or default and/or strikes of officers and crew whether due to labour dispute or disputes with Unions or associations concerned or connected with Owners affairs or otherwise, fire, breakdown or damages to hull machinery or equipment, grounding, detention by average accident to ship or cargo, dry docking for the purpose of examination or painting bottom or other necessary to maintain the efficiency of the vessel or by any other cause whatsoever preventing the full working of the vessel, the payment of the hire shall cease for the actual time thereby lost, and if upon the voyage speed be reduced by defect in/or breakdown of any part other hull, machinery or equipment. The time so lost, and the cost of any extra fuel consumed in consequence there of and all extra directly related expenses shall be deducted from the hire.

Should the vessel deviate or put back during a voyage contrary to the orders or directions of the Charterers for any reason (except saving life and/or property and/or avoiding or escaping of any perils and/or dangers) the hire to be suspended from the time of her putting back or deviating; until she is again in the same or equidistant position from the destination and the voyage resumed there from.

After suspension of hire from any case, the vessel shall be placed at Charterers disposal at same port or position where hire was suspended. Charterers may, however, in their option accept the vessel on hire again in such position and at such time as the vessel may again in all respects be ready to comply with order and directions of the Charterers, provided always to be either same port/position or equidistant.

### 36. QUARANTINE.

Normal quarantine and expenses to enter the port to be for Charterers account but any time of detention and expenses for quarantine due to pestilence, illness etc of Master, officers and crew, to be for Owners' account.

### 37. GEAR BREAKDOWN.

In the event of partial or total breakdown and/or of unavailability of derrick(s)/crane(s) for any reasons whatsoever other than caused by negligence of Charterers / Charterers servants, the hire to be reduced pro rata basis actual time lost for the period of such breakdown and/or unavailability always excluding shore delays like shortage of trucks/barges, transportation delays, insufficient gangs where vsl's full available gears are not in use, weather delays, strike e.t.c. and only for when the Vessel stay in port under cargo operation (excluding

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING" Charter party dated 6ᵀᴴ MARCH 2007.

idle times) but not more in relation to the number of vessel's holds available. If Charterers in their opinion continue to work on hatch or hatches affected by breakdown by hiring shore appliances, Owners are to pay for extra shore appliances subject to Owners prior approval but in such case Charterers are to pay full hire for all time shore appliances are working.

### 38. READINESS.
On arrival at the first load port vessel's holds to be swept, water washed and cleaned, dry and free of previous cargo and loose rust and scale, free of infestation to an independent surveyor's satisfaction, and fit in every way to receive and carry any cargo permissible under this Charter Party. In case vessel fails to pass the above inspections as required by Charterers and/or the independent surveyors then the vessel shall be off hire from the time of rejection until such time as the vessel passes the above inspections.

If some holds/cargo carrying compartments are not accepted, Charterers shall have the option of accepting the vessel with proportionate to the number of holds/cargo carrying compartments which have passed survey.
Any failure of holds readiness during Intermediate voyages, Owners will not be responsible for same and for any consequential delays and vessel to remain on hire throughout.

### 39. CERTIFICATE/VACCINATIONS.
Owners are obliged to deliver and keep the vessel, her crew and anything pertaining hereto supplied with all the required up-to-date and valid international trading certificates, enabling the vessel and her crew to load, carry and discharge all cargoes permitted under this Charter Party and to call at all ports for cargo operations
And/or receive bunkers within the trading limits of this Charter Party.

It is the responsibility of the Master and the Owners to arrange for any special vaccinations required at all ports of call and to keep on board corresponding valid certificates.

If Owners fail to comply herewith any time lost and all extra directly related expenses to be for Owners account and Charterers may deduct same from hire.

### 40. SURVEYS.
At port of delivery, in Charterers time and at last port prior to redelivery, in Owners time, a joint on/off-hire condition plus bunker survey to be held by a single independent Surveyor jointly appointed.  Cost of same to be equally shared between Owners and Charterers.

### 41. PRE LOADING.
In the event of loading steels pre-loading survey is to be carried out by Owners P and I club surveyor and costs to be equally shared. Time for survey to count.

### 42. INTERNATIONAL TONNAGE CERTIFICATE.
On delivery the vessel shall have on board an International Tonnage Certificate valid for the duration of this Charter party and such Tonnage certificate shall be acceptable by the local authorities the countries of call within the trading limits-of this Charter Party. Should such certificate not be acceptable to the local authorities any time lost and all extra direct proven and duly supported by vouchers expenses for issuing an acceptable certificate are to be for the Owners'account.

### 43. ITF/FLAG RESTRICTIONS.
The Owners are responsible for any loss of time or delay or restriction to the full working of the vessel resulting from any action that may be taken against the ship and/or the Owners by third parties by reason of the terms and conditions of employment of crew/officers by the Owners. Any extra expenses resulting directly from such action shall be the responsibility of and paid for by the Owners or, in Owners option, shall be paid by Charterers and deducted from the hire.

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6<sup>TH</sup> MARCH 2007 .

Owners warrant that the vessel is not blacklisted by any country within the
trading limits of this Charter party.

### 44. OIL POLLUTION.

Notwithstanding any terms or conditions stated elsewhere in this Charter party it
is warranted that during the currency of this Charter party Owners will comply
fully with any legislation enacted with respect to oil or other pollution (such
expression to include any rules and/or regulations issued there under) by any
government including federal, state or municipal or other division or authority
thereof.

In particular, Owners to establish and maintain at their expense such financial
security or responsibility in respect of oil or other pollution damage as may be
required by any such legislation.

Should any delay to the vessel or any extension of the voyage occur from failure
of Owners to comply with such oil or other pollution legislation, the vessel is to
be considered off-hire for the period of such delay. Owners hereby accept
responsibility to comply fully with such oil or other pollution legislation.

### 45. P AND I CLUB/CARGO CLAIMS.

Owners warrant that the vessel is entered and shall remain entered in an
International Group Protection and Indemnity Association for the duration of this
Charter party. Entry shall include, but not be limited to, usual or customary
cover for cargo claims and Owner's liability for personal accidents or injuries.
incurred by third parties on board or about the vessel. Vessel is presently
entered with: INGOSTRAKH (RUSSIA)

Charterers to confirm that they have C.L.L. cover for the entire duration of the
Charter and to declare their CLL Club.

Disp. Owners P. and I. Club : SKULD

Bagged cargoes clause: Owners will not be responsible for any shortage, caking of
bags and damage claims at discharge port unless same proven to have been caused by
unseaworthiness of vessel. Consequently Owners shall not be held responsible for
any customs fines at all ports due to shortage / caked & damaged cargo (es).
Adequate dunnages to be provided by Charterers in order to avoid any damage to
bags due to sweating and any eventual caking of cargo.

### 46. CLAIMS.

All claims of whatsoever nature (excluding cargo claims) to be deemed to be waived
and barred unless arbitration in accordance with Clause 61 is commenced within 12
months of vessel's redelivery.

Any cargo claim to be settled in accordance with the Interclub NYPE Agreement with
amendments to date but subject to notification of claims within 15 months of cargo
discharge instead of the 2 years provided by the Interclub Agreement.

### 47. DELETED

### 48. TRADING EXCLUSIONS.

Trading to be worldwide between safe ports, safe berths, safe anchorages and
places always safely afloat always safely accessible, always within I.W.L., but
excluding Australia, USA, Canada, Scandinavia New Zealand, Syria, Lebanon, Namibia,
Ethiopia, Somalia, Albania, Israel, Eritrea, Congo Democratic Republic, Liberia,
Sierra Leone, TURKISH OCCUPIED CYPRUS, IRAQ, HAITI, GUINEA BISSAU, NO DIRECT
SAILING BETWEEN TAIWAN AND CHINA OR TAIWAN AND NORTH KOREA IN EITHER DIRECTION.
ANY WAR ZONE AND AREA OF CONFLICT TO BE EXCLUDED AS LONG AS LLOYDS OF LONDON IS
CHARGING EXTRA WAR RISK INSURANCE ON COMMENCEMENT OF VOYAGE OR A U.N. BOYCOTT
APPLYING. CHRS HAVE OPTION TO BREAK IWL AND/OR TO TRADE AT WAR/WAR-RISK AREAS
AGAINST PAYMENT OF EXTRA PREMIUM. ALSO MIND THE TONNAGE SUEZ, PANAMA CERTIFICATES
ARE NOT AVAILABLE.( BUT IF CHTRS NEED, OWNER'S CAN ARRANGE IT DURING 1 MONTH)

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
### Charter party dated 6<sup>TH</sup> MARCH 2007.

*49. WAR RISK INSURANCE.*
Basic annual war risk insurance to be for Owners account.

If there is any extra/additional war risk insurance premium applicable as declared
by Lloyds War Risk Association prior to entering a port or area under this Charter
Party, Owners to immediately advise Charterers. The vessel is to only enter port
or area upon Charterers confirmation of their agreement to same in which cases
additional War risk premium to be for Charterers account.

In case additional War risk insurance premium applies, Charterers to reimburse
Owners against Owners Underwriters invoice by fax/email. Extra War risk payable by
Charterers to be on declared H+M value of US$ 6.0 Million including increased
value, the Charterers to be entitled to utilize any discount/rebate granted
through the underwriters to Owners in respect of Extra war risk insurance.  Crew
war bonus, blocking and trapping, if any to be for Charterers's account.

*50. BIMCO ISM CLAUSE.*
The BIMCO ISM Clause to apply throughout the currency of this Charter party.
From the date of coming into force of the International Safety Management (ISM)
Code in relation to the vessel and thereafter during the currency of this Charter
party, the Owner shall provide that both
the vessel and 'the Company' (as defined by the ISM code) shall comply with the
requirements of the ISM code. Upon request the; Owners shall provide a copy of the
relevant document of Compliance (DOC) and Safety Management Certificate (SMC) to
the Charterers. Except as otherwise provided in this Charter party, loss, damage,
expense or delay caused by failure on the part of the Owners or 'the Company' to
comply with the ISM code shall be for Owners' account.

*51. INTERVENTION.*
Any time lost to the voyage due to U.N. or other government agency or political
intervention/inspection/protocol to be counted as time on hire provided the delay
is not caused by Owners/Master. For sake of clarity, the vessel shall be placed
off hire during time lost due to the failure of Owners/Master to follow Charterers
orders or directions in connection with meeting UN requirements (including but not
limited to arranging for stowage of cargo to facilitate UN inspection.·

*52. CARGO EXCLUSIONS.*
THE VSL SHALL BE EMPLOYED IN CARRYING LAWFUL MERCHANDISE EXCLUDING ANY GOODS OF A
DANGEROUS, INJURIOUS, FLAMMABLE OR CORROSIVE NATURE.

IN ADDITION THE FOLLOWING CARGOES ARE SPECIFICALLY EXCLUDED: always excluding
asphalt acids, silica sand, asbestos, livestock, hides, Ammonium nitrate, Motor
blocks and turnings, pitch in bulk, arms, ammunitions, explosives, nuclear and
radio-active materials/products/wastes, petroleum and/or its products, fishmeal,
calcium carbide, calcium hydrochloride, bonemeal, creosoted goods, charcoal,
mobile homes, turpentine, ferrosilicon in bulk, harmful and combustible seed cakes
and oil cakes, motor spirits, waste wet hides Chilean nitrate, copra and copra
products, quick lime, drip pond coal, tar or any of its products, direct reduced
iron,

SULPHUR, BLK SALT, CHARCOAL IN BLK AND IN BAGS, CEMENT IN BULK, CEMENT CLINKER IN
BULK (ONCE IN 3 MTHS), SPONGE IRON, YELLOW PHOSPHORUS, ALL TYPES OF SCRAPCAUSTIC
SODAACETONE, BITUMEN, BLACK POWDER, BONES, CALCIUM CARBIDE, CALCIUM HYDRO-CHLORIDE,
DIRECT REDUCED IRON ORE PELLETS, HOT BRIQUETTED IRON,NAPHTHA, NIGER SEED.

ALL CARGOES TO BE LOADED IN ACCORDANCE WITH THE REQUIREMENTS AND/OR
RECOMMENDATIONS OF THE IMO FOR VESSEL'S OF THIS TYPE

IF UNPROTECTED PIPES ARE LOADED THEN CHRS TO REMAIN RESPONSIBLE FOR ALL CGO CLAIMS
EXCEPT THOSE DUE TO UNSEAWORTHINESS/CARGOWORTHINESS OF THE VSL.

CHOP TO LOAD MALAYSIAN/INDONESIAN/SIAMESE AGRICULTURAL PRODUCTS, IN CASE SAME
REQUIRE CO2 FITTINGS THEN CHRS TO INSTALL TEMPORARY CO2 FITTINGS AT THEIR

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6<sup>TH</sup> MARCH 2007 .

TIME/EXPENSE.

CHRS ARE NOT PERMITTED TO LOAD ANY CARGO BREACHING U.N. EMBARGOES.

WHEN SULPHUR/SALT LOADED, THE FOLLOWING TO APPLY: SAME TO BE LOADED, STOWED,
CARRIED AND DISCHARGED STRICTLY IN ACCORDANCE WITH IMO AND LOCAL RULES AND
RECOMMENDATIONS.
THE BELOW MENTIONED HOLD PROTECTION CL. TO APPLY:

HOLD PROTECTION CL. FOR LOADING SULPHUR/SALT WHEN LOADING SUCH CGO, THE VSL'S
HOLDS ARE TO BE COATED WITH HOLD BLOCK WHICH TO BE SUPPLIED AND APPLIED BY CHRS
PRIOR TO SUCH LOADING TO THE SATISFACTION OF THE VSL'S MASTER.

IF CHRS REQUEST VSL'S CREW TO PERFORM SUCH COATING OF VSL'S HOLDS THEN CHRS ARE TO
PAY OWS A CREW BONUS OF USD 500 PER HOLD FOR APPLICATION OF HOLD BLOCK.

SUPPLY OF MATERIALS FOR HOLD BLOCK BUT NOT LIMITED TO HOLD BLOCK AND ANY SPECIAL
EQUIPMENT REQUESTED INCLUDING ANY SPECIAL CLOTHING TO BE FOR CHRS ACCT. REMOVAL OF
HOLD BLOCK TO MASTER'S SATISFACTION TO BE ENTIRELY FOR CHRS ACCT AND IN THEIR TIME.

HOWEVER, IF REQUESTED, VSL'S CREW TO CLEAN HOLDS AFTER SULPHUR/SALT CGO, CHRS TO
PAY VSL'S CREW AN EXTRA BONUS OF USD 800 PER HOLD. CHRS TO SUPPLY HOLD BLOCK
REMOVAL MATERIALS AS RECOMMENDED BY MANUFACTURES AND ANY OTHER SPECIAL EQUIPMENT
OR MATERIALS TO BE ENTIRELY FOR CHRS ACCT. OTHERWISE THE TERMS OF THE AGREED
INTERMEDIATE HOLD CLEANING CL. TO APPLY.

CHRS MAY LOAD NON-OILY SHREDDED SCRAP OR NON-OILY HMS 1 AND 2- SAME IS TO BE
LOADED WITH FOLLOWING SOFT LADING CL. NO OTHER TYPE/FORM OF SCRAP TO BE PERMITTED.
SHREDDED SCRAP/HMS 1 AND 2 NOT TO BE LOADED AS LAST CARGO.

SOFT LADING CL.

CHRS / SUB-CHRS AND/OR THEIR STEVEDORES/SERVANTS ARE TO LOWER THE CGO DOWN SOFTLY
AS CLOSE TO THE TANK TOPS AS POSSIBLE, ON THE TANK TOPS UNTIL A LAYER OF CGO IS
BUILT UP AT LEAST TO BE ABT 2 (TWO) METRES HEIGHT OVER THE ENTIRE TANK TOP AREA
BEFORE PROCEEDING TO LOAD IN THE NORMAL MANNER. MASTER HAS THE RIGHT TO STOP
LOADING SHOULD STEVEDORES/OTHER LOADING PERSONNEL FAIL TO COMPLY WITH ABOVE AND/OR
ENDANGER THE VSL AND/OR HER EQUIPMENT/FITTINGS AT ANY STAGE OF LOADING.

CHRS TO BE RESPONSIBLE FOR ANY DAMAGE TO THE HOLDS, NORMAL WEAR AND TEAR EXCEPTED.

IN CASE CHRTS WILL NEED TO SHIP SOME CARGO, LIKE PETCOKE, CLINKER SAME TO BE
AGREED ADDITIONALLY FOR EACH PARTICULAR CASE. OWS COULD AGREE ON "CEMENT CLINKER
IN BLK", PROVIDED ONE SHIPMENT WITHIN 3 MOS AND NOT TO BE LAST CARGO. CEMENT
CLINKER IN BULK (ONCE IN 3 MTHS - APPLY TO CMENT CLINKER ONLY). PETCOKE IS ALLOWED
TO LOAD IF NOT LAST.

SULPHUR, SALT, SCRAP, PETCOKE, CLINKER NOT TO BE LAST CARGOES. IF ANY HOLD
CLEANING FOR ABV CGO USD 800 PER HOLD.

*53. DECK CARGO (ENGLISH LAW).*
deleted

*54. BUNKERS.*
Bunkers on delivery about metric tons IFO 400 and about 40-60 metric tons MGO.

Vessel to be redelivered back to Owners with about same quantity of bunkers as on
delivery and same prices to apply both ends.

On delivery, together with first hire payment, Charterers to take over and pay for
bunkers on delivery at US$ 308.00 per metric ton IFO and US$ 536.00 per metric ton
MGO and Owners likewise to take over bunkers remaining on board, on redelivery, at
the same prices.

{PAGE}

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
### Charter party dated 6<sup>TH</sup> MARCH 2007 .

Owners' option to bunker concurrent with Charterers' operations provided not interfering with same.

Charterers' right to deduct estimated value of bunkers on board at redelivery from last sufficient hire payment(s).

Value of delivery bunkers to be paid together with the first hire payment. The Charterers may deduct from the last sufficient hire payments the estimated value of bunkers on redelivery. Charterers are allowed to bunker vessel for their own account prior delivery provided same does not interfere with vessel's operations. Owners are allowed to bunker vessel for their own account prior redelivery provided same does not interfere with vessel's operations.

Charterers' confirm that supply will be done as per regulations 14 and 18 of annexure VI of Marpol 73/7 and Bunker specifications met ISO 8217 1996 requirements with maximum 4.5 pct M/M Sulphur for fuel oil. Analysis of the bunker sample in accordance with the recognized ISO test methods at a mutually agreed reputable and dedicated laboratory and shall be binding and conclusive for both parties.

### 55. VESSEL'S PERFORMANCE.
In the event of the vessel failing to achieve the average minimum speed of about 10.5 knots on about 25 metric tons I.F.O. and about 2.50 metric tons M.G.O. at sea in fair weather only in conditions up to and including Beaufort Scale 3 and Douglas State of sea 3 throughout, the duration of the Charter Party any extra time spent and/or cost of extra bunkers consumed to be deducted from hire except when speed was decrease for execution of requirements for safety sailing (including but not limited: in case traffic congestion and others) or other case for with Owners are not responsible (including but not limited: winding fishing net on propeller and other). Owners' and Charterers' to accept the weather conditions as monitored by a reputable Weather Routing company and base their voyage calculations there accordingly. However if such weather condition as monitored by Ocean routes is not supplied to Master, he is free to follow the Owners' established reporting procedure. In such case the entries in deck log shall be taken as final and binding in case of dispute.

Should the vessel put back while on voyage for weather reasons, except adverse conditions in excess of Beaufort Scale 3 and Douglas State of sea 3 or adverse swell or currents or on Charterers' instructions, the Charterers' shall deduct from hire the time lost and excess bunkers consumed as a result of such putting back. About in speed is understood to mean plus/minus 0.5 knots and in consumption 5% more or less.

### 56. MASTER'S/CREW'S ASSISTANCE.
With reference to Clause 8 of this Charter party hire to include ' customary assistance' which shall mean all types of work, which the Master and the crew would normally do when the ship is trading for the Owners' account provided that all or part of such works are permitted by port authority and/or local regulations such as, but not limited to:

a) Raising and lowering and rigging derricks/cranes and/or gangways in preparation for loading and/or discharging
b) Opening and closing of hatches in connection with loading and discharging local regulations permitting
c) Closing and opening of hatches in the event of weather which may adversely affect condition of cargo carried on board during loading and discharging if local regulations permitting
d) Customary supervision of loading and discharging. Master to remain responsible for the stowage of the, vessel in so far as this concerns the trim and/or stability of the vessel.
e) Maintaining sufficient steam/electric power and all cranes in good order whilst loading and discharging including regular maintenance of derricks/cranes

{ PAGE }

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING" Charter party dated 6TH MARCH 2007.

f) Shifting vessel during loading and discharging and shifting berth
g) Docking and undocking
h) Bunkering
i) Weather permitting, officers and crew to shape up vessel's hatches and derricks/cranes as much as possible prior to arrival at loading and/or discharging ports or places so as to immediately commence loading and/or discharging operations.

### 57. HATCH COVERS.
Vessels, hatch covers, are and to remain during the currency of this Charter party in proper condition, totally watertight. Any time lost and/or expenses incurred as the result of hatch covers not being watertight to be for Owners' account. Charterers have the option to carry out a Hose test to ascertain water tightness, provided no cargo on board.

OWNRS STRE THAT VSLS HCOVERS ARE TO BE WATERTIGHT ALL THROUGHOUT THIS CHARTER PERIOD AND IF ANY HCOVER FOUND DEFECTIVE, SAME TO BE RECTIFIED AT OWNRS TIME AND EXPS TO INDEPENDENT SURVEYORS SATISFACTION, CHTRS ALSO HAVE RIGHT TO CARRY OUT HOSE TEST ON ALL HATCHES AT ANY TIME DURING THIS CHARTER AT THEIR TIME AND EXPENSES.

### 58. BILLS OF LADING.
Charterers or their agents are hereby authorized to sign bills of ladings on master's behalf provided they are in strict conformity with mate's receipts.

Congenbill" edition 1994 Bill(s) of Lading to be used in Charterers' option and the Master to sign "Freight Prepaid" Bill(s) of Lading or if requested by Charterers, Master to give his authority to Charterers port agents to sign such Bill(s) of Lading, as strictly as presented, provided in accordance with Mate's Receipts and Charterers holding Owners harmless against all consequence arising out of their signing Bill(s) of Lading. Master not to unreasonably with hold Bill(s) of Lading / authority after completion of loading and any delay to vessel due to above not to count as hire.

If required by Charterers to insert carriers name in the bills of lading due to lc regulations / requirements, Bill(s) of Lading to state Charterers name as carriers.

No way Bill(s) of Lading to be issued. No Liner Bill(s) of Lading to be issued.

### 59. SUPERCARGOES/PORT CAPTAINS.
The Charterers and/or their supercargo (es) shall have free and unlimited access to the whole vessel including bridge, holds and engine room and also to all vessels' tanks, including but not limited to:

Bunker lubricating oil sludge, ballast and freshwater tanks. Whenever required provided same is practical and not affect the stability, safety permissible stresses of the vessel too the Master's discretion, the Master must bring the vessel into even trim to ensure correct bunker soundings. The Charterers and/or their supercargo (es) and/or surveyors to have free and unlimited access to the vessel's decks and engine log books, tank plans, calibration scales and/or other plans as requested and are allowed to make copies of the original log books on board or ashore.

Charterers to sign and send to Owner's office Letter of Indemnity as per Owner's text in case they decide to place the Supercargo and/or their representative on board.

### 60. STEVEDORE DAMAGE CLAIMS.
Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and / or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such notice to specify

{ PAGE }

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6<sup>TH</sup> MARCH 2007.

the damage in detail and to invite Charterers to appoint a surveyor mutually
acceptable to assess the extent of such damage.

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and / or
the safety of the crew and / or affecting the trading capabilities of the Vessel,
the Charterers shall immediately arrange for repairs of such damage(s) at their
expense and the Vessel is to remain on hire until such repairs are completed and
if required passed by the Vessel's classification society.

(b) Any and all damage(s) not described under point (a) above shall be repaired at
the Charterers' option at Charterers cost, before or after redelivery concurrently
with the Owners' work. In such case no hire and / or expenses will be paid to the
Owners except and insofar as the time and / or the expenses required for the
repairs for which the Charterers are responsible, exceed the time and / or
expenses necessary to carry out the Owners' work.

### 61. IMBA ARBITRATION CLAUSE.
All disputes or differences arising out of or under this contract which cannot be
resolved amicably shall be referred to arbitration in London.

Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed
by each party. In the case of an arbitration on documents, if the two arbitrates so
appointed are in agreement, their decision shall be final. In all other cases the
arbitrators and the reference shall be to the three-man tribunal thus constituted.

If either of the appointed arbitrators refuses to act or is incapable of acting
the party who appointed him shall appoint a new arbitrator in his place.

If one party fails to appoint an arbitrator, whether originally or by
way of substitution for two weeks after the other party, having appointed his
arbitrator, has (by telex/fax) called upon the defaulting pity to make the
appointment, the President for the time being of the London Maritime Arbitrator's
Association shall, upon application of the other party, appoint an arbitrator on
behalf of the defaulting party and that arbitrator shall have the like powers to
act in the reference and make an award (and , if the case so requires ,the like
duty in relation to the appointment of a third arbitrator) as if he had been
appointed in accordance with the terms of the agreement.

This contract is governed by English Law and there shall apply to all proceedings
under this clause the terms of the London Maritime Arbitrators' Association
current at the time when the arbitration
proceedings were commenced. All appointees shall be members of the Association.

Provided that where the amount in dispute does not exceed the sum of USD 50,000
any dispute shall be resolved in accordance with the Small Claim's Procedure of
the London Maritime Arbitrator's Association.

### 62. LIEU OF HOLD CLEANING ON REDELIVERY.
The Charterers have the option to redeliver the vessel with unclean holds
excluding removal/disposal-of dunnage/lashing material/debris in consideration for
which Charterers are to pay at lump sum of US$ 3500 . Such bonus to be paid to
Owners together with hire payment.

### 63. LIEN.
In case of non payment of charter hire or general average contribution or delay in
payment of same, Owners have the right to lien the cargo irrespective of
Charterers/Shippers/Receivers or third parties mentioned in the bills of lading
and irrespective of their rights or liabilities for same. Time Charterers to be
directly responsible to the Owners for payment of the pending hires and directly
responsible to the receivers/shippers/third parties for the cargo.

### 64. FITTINGS.

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6TH MARCH 2007 .

Charterers to have the option to weld padeyes and/or other lashing/securing devices/points at their expense and subject to the Master's approval which not to be unreasonably withheld. Charterers to remove all such padeyes and/or other lashing/securing devices/points prior to redelivery. Charterers have the option not to remove padeyes etc. in consideration of which Charterers are to pay USD 15.00 per padeye etc. Any lashing/separation materials required to be provided and paid for by the Charterers.

### 65. GRABS.
Owners confirm that Vessel fully suitable for grab load/discharge.

### 66. SAFE BALLAST.
Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid ballast is required, all expense for same including time used in loading and discharging to be for Owners account.

### 67. BALLAST/DEBALLASTING.
Vessel to ballast/deballast clean water ballast tanks if required by Charterers or their agents at any time during loading and/or discharging, free of expense to Charterers but in Charterers time. All ballasting/deballasting shall be at the discretion of Master having due regard to stability and seaworthiness of the vessel.

### 68. GENERAL AVERAGE.
Hire not to contribute to General Average.

### 69. BULLDOZERS.
Charterers to have the option to use bulldozers in vessels holds, provided not exceeding the tank top strength.  If required, vessel to lift onboard, shift from hold to hold and discharge the bulldozers by use of vessels gear subject Masters approval and without responsibility and liability to the vessel.

### 70. POWER CLAUSE.
The vessel to supply free of expense to Charterers sufficient power per crane from the power supply panel in each cranehouse.  Charterers have the right to fit/connect magnets, grabs or other loading/discharging equipment customary to the trade onto vessels cranes and/or power supply subject Masters approval.

### 71. GRAIN.
Owners warrant that the vessel is suitable for carrying a full cargo of grain in all holds without requiring any grain fittings and/or bagging or securing etc.

Vessel has on board a valid grain-loading booklet in accordance with SOLAS 1974 Regulation and IMO Resolution 264 (VIII) as adapted in 1974 and any update/amendments. Furthermore vessel to have on board approved table of heeding moments for @filled holds-untrimmed ends@ in accordance with IMCO to xix/inf.4. It is understood that grain loading to be in accordance to Imo regulations as per vessel's grain booklets

### 72. BOYCOTTS.
In the event of loss of time boycott of the vessel or any labour trouble by shore labour, seamen's unions, tugboats, pilots, linesmen, stevedores and local authorities etc., whether official or unofficial, arising by reason of vessel's flag, nationality or registry, her ownership, terms and conditions on which crew members are employed on this or any other vessel under the same ownership and/or operations and/or control payment of hire shall cease for the time thereby lost.

### 73. CUSTOMS/FINES.
Owners to be responsible for customs' fines and to put up security in case of necessity if Owner's vessel is proven responsible and if so demanded by local authorities for Owner's matter unless fines imposed to the vessel due to cargoes and/or Charterers and/or sub-Charterers and/or their agents omissions or faults in which case any expenses including security if necessary to be provided and paid by

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6<sup>TH</sup> MARCH 2007.

Charterers and vessel to remain fully on hire. Any dispute as to ultimate liability arising insofar to be decided according to the terms and conditions of this Charter party.

Owners to be responsible for any fines whatsoever in the event of smuggling acts by their own officers and/or crew, Owners passengers and/or stowaways and Owners to remain responsible for detention of the vessel due to smuggling and any other expenses arising from these acts. Charterers to be similarly responsible in respect of Charterers representatives and/or servants.

### 74. DEDUCTIONS.
The Charterers may deduct from the Charter hire max US$ 500/port of call disbursed for Owners account and Charterers to provide relevant supporting vouchers to the Owners soonest possible. In addition Charterers may deduct from the last hire payments the reasonable and undisputed estimated expenses incurred by Charterers for Owners account, notwithstanding that vouchers may not then have reached Charterers for submission to Owners which to be duly signed by Master.
(OWNRS EXPENSES SUBJECT TO OWNRS APPVL WHICH TO BE SUBSTANTIATED WITH RELEVANT VOUCHERS DULY SIGNED BY MASTER). (CHRTRS NOT TO DEDUCT OWNERS EXPENSES AND IF ANY SAME WILL BE FUNDED BY OWNERS IN ADVANCE)

### 75. DOUBLE BANKING.
(a)The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transshipment, loading or discharging of cargo and / or                                                                      bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c)Without prejudice to the generality of the Charterers rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) If in his reasonable opinion it is not safe so to do.

The master has the right at any time to order the other vessel away from his vessel or instruct his own vessel to sail if he considers it unsafe for vessel remain double banked.

(d) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

Lighterage operations, to be always carried out subject weather permitting.

### 76. DRAFT SRUVEY.
For the purpose of conducting a draft survey, the vessel must have on board certified calibrated scales for vessel's tanks and double bottoms and capacity plans, displacement scale and any other documents and information necessary for conducting a draft survey .The vessel's marks fore/aft/midship to be clearly legible.

### 77. SUEZ/PANAMA.

## Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
## Charter party dated 6<sup>TH</sup> MARCH 2007 .

Throughout the period of this Charter, vessel to be properly equipped to transit me Suez and Panama canal certificated and vessel and her fitting to comply with all applicable requirements/regulations of the Canal authorities. Any delays and extra expenses incurred in transit of the Canal through vessel's lack of proper certificated and or fitting to be for Owners account. ALSO MIND THE TONNAGE SUEZ, PANAMA CERTIFICATES ARE NOT AVAILABLE. ( BUT IF CHTRS NEED, OWNER'S CAN ARRANGE IT DURING 1 MONTH)

### 78. LOADING COILS.
If Charterers wish to load hot rolled coils then Owners confirm that coils may be loaded line for line in as many tiers as is necessary but always within vessel's permissible tank top strengths and to Master's satisfaction with regard to stress, trim and stability requirements.

### 79. GARBAGE.
All compulsory garbage disposal to be for Charterers account.

### 80. PNI & CLASS
Owners warrant that the vessel is entered with and fully covered by a PANDI Club that is a member of the International Group of PANDI Clubs.
Owners warrant that the vessel is classed and will remain so throughout the currency of the Charter party by a Classification Society that is a full member of the International association of Classification Societies.

### 81. NOTICES.
Owners are to give Charterers on fixing 5 days approximate followed by 3/2/1 days definite notice of vessels delivery and are to Let Charterers know immediately of any change in vessels position.

### 82. DELETED

### 83. DELETED

### 84. DELETED

### 85. ORIGINAL BILLS - CARGO DELIVERY W/OUT ORIGINAL BILLS
In case the Original Bill(s) of Lading are not available at discharge port(s), Owners/Master are to allow the discharge/release of the entire cargo without presentation of original bills of lading and Charterers to provide a single Letter of Indemnity in Owner's P and I Club standard wording signed by Charterers authorized signature only. Original Letter of Indemnity to be mailed to Owners within 7 days of issuance and Charterers endeavour to submit all original bills of lading prior completion of charter.

In case of any third party brings claims for delivery cargo without bill of lading or any similar claim against the Vessel and/or the Owners and/or their servants and/or agents, the Charterers is obliged immediately to present banking guarantee in form of Owners' P&I Club issued by first class bank.

### 86. TAXES/DUES.
All taxes and/or dues on vessel and/or cargo and on Charter hire and freights arising out of cargoes carried or ports visited under this Charter party shall be for Charterers account, except taxes levied on Vessel/flag and in connection with port of vessel's registry which to be for Owners' account ports of call without paying agency fee.

### 87. HAMBURG RULES.
It is expressly agreed that Charterers will not issue or cause to be issued Bills of Lading which are subject to the provisions of Hamburg rules.

### 88. INSPECTION.

Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
Charter party dated 6TH MARCH 2007.

The Charterers shall have the option to superficially inspect the vessel at any
time during the period of the Charter Party and the Master/Officers and crew to
render all necessary cooperation

89. REDELIVERY.
DLOSP 1SP SPORE/JPN RGE ATDNSHINC PORT IN CHOPT

90. AD HOC ARRANGEMENTS.
In case any special operation beyond customary assistance by crew is requested by
Charterers, Charterers are at liberty to make ad-hoc arrangements with vessel's
managers where appropriate and subject to Master's consent.

91. BALLASTING.
Charterers have the right to request Master to utilize the vessel's maximum water
ballast capacity in order to bring down the vessel's height to get into position
under loading and/or discharging appliances, however, always in conformity to free
board and/or safety.

92. INTERMEDIATE HOLD CLEANING.
On completion of discharge each cargo, vessel's crew shall render customary
assistance in cleaning cargo holds in preparation for next cargo, if required by
Charterers and if not prevented by the shore regulations. Such cleaning to be
performed while vessel is enroute to next load port provided that this can be
safely done, weather permitting and that duration of the voyage is sufficient.

Charterers shall pay US$ 2750 l/sum as agreed in main terms. All fresh water
consumed to be for Charterers account. Charterers not to negotiate with the crew.
Hold cleaning bonus to be paid directly to Master upon completion of each voyage.

In any case Owners are not responsible for passing hold survey for loading of next
cargo during the entire period. The work to be done in the same efficient manner
as if the vessel was trading for Owners account but without responsibility and
liability on part of Owners regarding acceptance of vessel at loading port if
vessel is rejected due to residue of previous cargo(es) carried under this Charter
Party.

93. MORE THAN 1 LOAD/DISCH PORT.
''Vessel to be left in safe seaworthy trim between berths and/or Port's to
Master's satisfaction''.

94. SEPARATION CLAUSE.
In case (2) two or more different grades of bulk cargo is to be loaded into the
same cargo hold, Time-Charterers to be entirely responsible for the compatibility
of cargoes involved and separation and in case of any commingling of cargo or
contamination Time-Charterers again to be entirely responsible for same and owners
to be kept harmless of any/all consequences.

95. PROTECTIVE CLAUSES.
The General Clause Paramount, the New Both-to-Blame Collision Clause, the New
Jason Clause, Baltic Conference War Risks Clause for Time Charters 1993 (Code
Name : Conwartime 1993), P. and I. Bunkering Clause, War Clauses, The Chamber of
Shipping Nuclear Material Clause as applicable and attached are all to be
considered as incorporated into this Charter Party and all Bills of Lading issued
under this Charter shall be subject to all said clauses and contain Voywar 1993.

96. LOG LOADING CLAUSE
DELETED

97. NAABSA.
Owners have the right to engage diver and/or class surveyor to inspect vessel's
bottom and/or underwater parts at Charterers' time, cost and expenses at the port
where vessel was not always afloat but safely aground or in Owners' option at
first convenient port thereafter if the Master has reason to believe there is

Additional Clauses to the M.V. "KRYMCHAKHLAR / JH SHIPPING"
Charter party dated 6TH MARCH 2007.

damage after calling at the port where vessel touched the bottom or safely lied
aground.   Charterers are responsible for all damages attributed to such trading.

98.
For the purpose of times of delivery/re-delivery or termination of charter shall
be adjusted to GMT. TIME ON DELY/REDELY TO BE IN LOCAL TIME BUT TO BE CONVERTED TO
GMT FOR THE PURPOSE OF HIRE CALCULATION.

99.
This fixture to be kept strictly private and confidential and not reported to any
third party.

NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the
commencement of the voyage, resulting from any cause whatsoever, whether due to
negligence or not, for which, or for the consequence of which, the carrier is not
responsible, by statute, contract or otherwise, the goods, shippers, consignees or
owners of the goods, shall contribute with the carrier in general average to the
payment of any sacrifices, losses or expenses of a general average nature that may
be made or incurred and shall pay salvage and special charges incurred in respect
of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for
as fully as if the said salving ship or ships belonged to strangers.   Such deposit
as the carrier or his agents may deem sufficient to cover the estimated
contribution of the goods and any salvage and special charges thereon shall, if
required be made by the goods, shippers, consignees or owners of the goods to the
carrier before delivery.

NEW BOTH TO BLAME COLLISION CLAUSE

If the ship comes into collision with another ship as a result of the negligence
of the other ship and any act, neglect or default of the master, mariner, pilot or
the servants of the carrier in the navigation or in the management of the ship,
the owners of the goods carried hereunder will indemnify the carrier against all
loss or liability to the other or non-carrying ship or her owners in so far as
such loss or liability represents loss of or damage to or any claim whatsoever of
the owners of the said goods, paid or payable by the other or non-carrying ship or
her owners to the owners of the said goods and set off, recouped or recovered by
the other or non-carrying ship or her owners as part of their claim against the
carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in
charge of any ship or ships or objects other than, or in addition to, the
colliding ships or objects are at fault in respect to a collision or contact.

+++++++++++++

EXHIBIT "2"

Addendum No.1
to

## M/V "KRYMCHAKHLAR"
## CHARTER PARTY DATED 6ᵀᴴ MARCH 2007.

### ACCOUNT JH SHIPPING CO. LTD., SEOUL. KOREA.

DATED: 9ᵀᴴ JULY 2007.

IT IS THIS DAY ( 9ᵀᴴ JULY 2007) THE FOLLOWING HAS BEEN MUTUALLY AGREED
BETWEEN OWNERS AND CHARTERERS

M/S. VICTORY SHIPPING SDN. BHD. MALAYSIA, AS OWNERS OF MV
'KRYMCHAKHLAR' AND THE CHARTERERS, M/S. JH SHIPPING CO. LTD., KOREA

THAT;

CHARTERERS HEREBY AGREE TO EXTEND THE CURRENT C/P FOR A FURTHER
PERIOD OF 5 MONTHS WITH FOLLOWING AMENDMENTS:

- IN DIRECT CONTINUATION FOR A FURTHER PERIOD OF 6 MONTHS +/- 15 DAYS IN
CHOPT.
- HIRE USD 17,100 PD INCLOT
- NEW HIRE RATE WILL BE APPLIED FROM 2200 HRS GMT 23ᴿᴰ SEPT 2007 FOR
DIRECT CONTINUATION

ALL OTHER TERMS AND CONDITIONS TO REMAIN AS PER CHARTER PARTY M.V.
KRYMCHAKHLAR /JH SHIPPING DATED 6ᵀᴴ MARCH 2007, UNCHANGED.

*FOR AND ON-BEHALF OF OWNERS*
VICTORY SHIPPING SDN. BHD.
MALAYSIA

*FOR AND ON-BEHALF OF CHARTERERS*
JH SHIPPING CO. LTD., SEOUL,
KOREA.

## S.J. Lee

보낸 사람:   "SUNHILL CHARTERING" <brokers@sunhillchart.co.kr>
받는 사람:   "JH해운" <biz3@jhship.kr>
참조:        "sunhill chartering" <brokers@sunhillchart.co.kr>
보낸 날짜:   2007년 7월 9일 월요일 오후 5:21
제목:        RE MV KRYMCHAKHLAR / JH SHIPPING – D/C – CLEAN RECAP

SUNHILL CHARTERING CO.,LTD, SEOUL
TEL: +82 2 3276 3760
FAX: +82 2 3276 3763
E-MAIL: brokers@sunhillchart.co.kr

HS LEE / CH KIM

CLEAN RECAP
================

RE MV KRYMCHAKHLAR / JH SHIPPING – D/C

ASPER NUMEROUS TELCON/E-MAIL, CHTRS CNFMD OWNS LAST AND
BELOW IS FULL FIXTURE RECAP FOR D/C AGREED SO FAR BTWN OWS AND CHTRS : –

– In direct continuation for a further period of 3 mths +/– 15 days in chopt
– Hire USD 17,100 pd inclot
~ All other terms as per existing cp dated 6th March 2007
– Sub chtrs bod appvl – lifted
– New hire rate will be applied frm 2200hrs gmt 23th sept for direct continuation.

End
HOPE ALL ABV IN ORDER, PLS ADV OWS CNFMTN.

B.RGDS /SUNHILL CHARTERING CO.,LTD
CH KIM (MOB +82-17-242-1014)

EXHIBIT "3"

S.J. Lee

보낸 사람:    "SUNHILL CHARTERING" <brokers@sunhillchart.co.kr>
받는 사람:    <biz3@jhship.kr>
보낸 날짜:    2007년 5월 10일 금요일 오전 9:07
제목:        MV. KRYMCHAKHLAR / JH SHIPPING ~ TCP URGENT

SUNHILL CHARTERING CO.,LTD. SEOUL
TEL: +82 2 3276 3761
FAX: +82 2 3276 3763
E-MAIL: brokers@sunhillchart.co.kr

HS LEE + SJ LEE / YM SEO

RCVD : -

FOLL FROM OWNERS (VICTORY SHIPPING MALAYSIA) PLS DISCUSS WITH CHARTS AND REQUEST THEM
TO HOLD ON NEGOTIATIONS, WE HAVE DEVELOPED A SERIOUS PROBLEM
WITH HEAD OWNERS

+++

TOP URGENT!!

+Without Prejudice+

Dear Mr. Manuel,

Pls convey below msg to Chrtrs JH Shipping.

At the time of negotiations for continuation of charter brought forward by chrtrs, in good faith, Disponent Owners in the intention of assisting Chrtrs to seek next employment from Med, had negotiated with Chrtrs for direct continuation for further 6 months time charter for MV Krymchakhlar.

Accordingly Disp. Owners had been negotiating with Head Owners for extension and had discussed with head Owners, whom had agreed for extension by verbal confirmation on hire rate basis the offer sent by H/Owners themselves. Disp. Owners had fixed other vessels in the same way on verbal confirmation with the Head Owners previously as Disp. Owners have a very close relationship with H/Owners.

On that basis, Disp. Owners approached Chrtrs for extension at a hire rate mutually agreed basis which vessel was fixed. However a new chartering person had entered the owners company and withdrew the vessel on the basis that hire was not sufficient for the present market. Disp. Owners had been trying to resolve this matter along with H/Owners brokers continuously for the last 5 weeks or so with constant persuasion. At one stage, Disp. Owners had even offered to pay more than the hire rate agreed with chrtrs in order to

fulfill their commitments with chrtrs but unfortunately, today the vessel has
been withdrawn by H/Owners after completion of 1st six months time charter. Thus the
vessel is not available for chrtrs for next 6 months in direct continuation after the expiry of
the 1st six months time charter.

Disp. Owners regret for this unfortunate circumstance, and hence request for Chrtrs kind
understanding in treating the addendum no.1 signed as null & void and to redeliver vessel
after the expiry of 1st six (6) months.

Disp. Owners looking forward to have Chrtrs favourable reply considering the good
relationship we have shared during this fixture.

Pls advise and await Chrtrs confirmation by return.

Brgds
Victory Shipping

B.RGDS / SUNHILL CHARTERING CO.,LTD
YM SEO (MOB +82-16-844-3281)

EXHIBIT "4"

## S.J. Lee

보낸 사람:    "SUNHILL CHARTERING" &lt;sunhill@sunhillchart.kr&gt;
받는 사람:    "JH혜은" &lt;biz3@jh-ship.kr&gt;
참조:          &lt;sunhill@sunhillchart.kr&gt;
보낸 날짜:    2007년 8월 22일 수요일 오후 7:30
제목:         MV. KRYMCHAKHLAR / JH SHIPPING

---

SUNHILL CHARTERING CO.,LTD. SEOUL
TEL: +82 2 3276 3750
FAX: +82 2 3276 3763
E-MAIL: brokers@sunhillchart.co.kr

---

SJ LEE / CH KIM

RCVD FLWG
QTE

RE MV KRYMCHAKHLAR / JH SHIPPING
--

GOOD DAY

foll recvd÷

÷Without Prejudice÷

Dear Mr. Manuel,

Have noted Chrtrs seeking next employment basis 5-10 sept from CTG.

Pls note that as per CP, chrtrs have until 23rd of Sept to redeliver vessel at Sing/Jpn range.
Nevertheless in accordance to Owners op with Head Owners, Owners have the option to add offhire
days to the charter period which works out to additional 9-10 days. This gives chrtrs additional time
till 3rd Oct to redeliver vessel at agreed redelivery range.

Hence pls advise chrtrs intentions and next voyage details.

Meanwhile with this additional time granted, Owners are constantly pushing and convincing head owners to
release the vessel back to Owners.

Pls be guided and advise asap.

UNQTE

B.RGDS /SUNHILL CHARTERING CO.,LTD
CH KIM (MOB +82-17-242-1014)

EXHIBIT "5"

Juana Lee

보낸 사람:    "S.J. Lec" <sjlee@jhship.kr>
받는 사람:    "SUNHILL CHARTERING" <brokers@sunhillchart.co.kr>
보낸 날짜:    2007년 8월 10일 금요일 오후 6:24
제목:    Re: MV. KRYMCHAKHLAP / JH SHIPPING


// WITHOUT PREJUDICE //

TO : SUNHILL CHARTERING / MS. Y M SEO
FM : J H SHIPPING

GOOD DAY!


Termination of the charter between the head owner and the disponent owner has
nothing to do with the contract between the disponent owner and the charterer, which
the disponent owner must obviously have acknowledged.

Accordingly, the addendum No. 1 to the original charter party dated 5th March 2007
entered into between the disponent owner, Victory Shipping SDN. BHD.Malaysia and
the charterer, JH Shipping Co. Ltd. on 9th July 2007 remains effective and binding,
and thus the charterer are entitled to keep using the vessel while seeking fixture of the
next employment.

If the disponent owner wish to avoid disputes with the charterer and to resolve the
problem reasonably, they are hereby requested to confirm by return either 1) they
provide a substitute vessel with similar spec at the same daily hire rate upon
completion of the current voyage at Chittagong, or 2) they compensate US$1 millions
to the charterer as loss of earning that could be gained by the charterer from the
charter as per the addendum No.1 when the charterer redelivers the vessel upon
expiry of the 1st about six months' charter period.

The disponent owner must be well aware of the fact that there are no other choices
than the two options aforementioned to amicably resolve the problem caused by non-
availability of the vessel after the 1st about six months' charter.

Therefore, the charterer look forward to the disponent owner's sensible decision and
return confirmation

The charterer hereby declare that they reserve all the rights to claim for damage,
losses, expenses and costs whatsoever arising from the disponent owner's non-
performance of the charter of the addendum No.1.


TKS N B.RGDS / SJ LEE
J H SHIPPING CO., LTD
============================

- TEL : 82) 2-2135~2003
- FAX : 82) 2-2135-2008
- TLX : K35200 JHSHIP

페이지 2/3

- MOB : 82) 10-9855-4742
- E-MAIL : biz3@jhship.kr

----- Original Message -----
From: SUNHILL CHARTERING
To: biz3@jhship.kr
Sent: Friday, August 10, 2007 4:46 PM
Subject: MV. KRYMCHAKHLAR / JH SHIPPING

---

SUNHILL CHARTERING CO.,LTD, SEOUL
TEL: +82 2 3276 3761
FAX: +82 2 3276 3763
E-MAIL: brokers@sunhillchart.co.kr

---

SJ LEE / YM SEO

RCVD : -

FOLL FROM VICTORY SHIPPING REQUEST YOU KINDLY HELP IN THIS
REGARDS CONSIDERING THE RELATIONSHIP WICH WE HAD SO FAR
SINCE THE VSL IS NOT FIXED PLS SEE THAT THERE IS NO FURTHER
COMPLICATIONS

QUOTE:-

+Without Prejudice+.

Dear Mr. Manuel,

Noted Chrtrs reply however pls make Chrtrs understand that vessel is no longer at
their disposal as H/Owners have officially withdrawn the vessel from the direct
continuation agreement.

The vessel stands withdrawn and Chrtrs are requested to treat the addendum no.1 as
null and void.

Also understand that vessel is not fixed for next voy/period and Chrtrs are still
circulating the vessel today for period charter of 4/6 mos or 5/7 months. Disp.
Owners reiterate that the vessel is withdrawn and Chrtrs are urged to refrain from
further fixing of the vessel in order to avoid any losses and consequences. If Chrtrs
still insist they may do so at their risk and expense.

Chrtrs are required to redeliver vessel on the expiry of the 6 months time charter with
CP dtd 6th March 2007 basis redelivery 1sp Singapore/Japan range. Pls note that

.Chrtrs have been given notice of withdrawal and its advisable and diligence on Chrtrs
part to avoid any further fixation that will lead to further losses.

Appreciate Chrtrs understanding and mutual agreement.

Rgds
Victory Shipping


B.RGDS / SUNHILL CHARTERING CO.,LTD
YM SEO (MOB +82-16-844-3291)

EXHIBIT "6"

페이지 1/2

S.J. Lee

보낸 사람:    "SUNHILL CHARTERING" <sunhill@sunhillchart.kr>
받는 사람:    "JH해운" <biz3@jhship.kr>
참조:        'SUNHILL CHARTERING' <sunhill@sunhillchart.kr>
보낸 날짜:    2007년 9월 21일 금요일 오후 9:37
제목:        Re: MV. KRYMCHAKHLAR / J H SHIPPING

---

SUNHILL CHARTERING CO.,LTD, SEOUL
TEL: +82 2 3276 3760
FAX: +82 2 3276 3763
E-MAIL: brokers@sunhillchart.co.kr

---

SJ LEE / CH KIM

rcvd flwg
qte

Re: MV. KRYMCHAKHLAR / J H SHIPPING

FOLL RECVD FROM OWNERS

QUOTE:

Thanks for Chrtrs last msg and based on below agreement, Owners will perform the next voyage and Master
will be instructed to comply to chrtrs instructions.

------ Original Message ------

From: SUNHILL CHARTERING
To: Exodus Chartering Services., India
Sent: Friday, September 21, 2007 4:01 PM
Subject: MV. KRYMCHAKHLAR / J H SHIPPING

---

SUNHILL CHARTERING CO.,LTD, SEOUL
TEL: +82 2 3276 3762
FAX: +82 2 3276 3763
E-MAIL: brokers@sunhillchart.co.kr

---

MANUEL / HANA KIM

Good day
rcvd foll fm chrts

===qte===

Re: MV. KRYMCHAKHLAR / J H SHIPPING

Charterers' position was already clearly declared.
Charterers are unable to understand why owners keep requesting for another addendum.

페이지 2/2

Following is what agreed.

Charterers shall pay an increased daily hire of US$21,000 for the period from 2200 hours GMT 3rd October, 2007
till completion of the next voyage from India to China, in exchange for that this vessel will perform the voyage from India to
China without her being taken out of the charter by head owners.
Charterers shall pay a daily hire at the rate fixed under the governing c/p for the period before 2200 hours GMT 3rd
October, 2007.
Owners shall remain responsible for all the losses arising from their non-performance of the charter for the period from
completion of the next voyage from India to China till around April 7, 2008 while charterers reserve the right to claim all
the damages whatsoever resulting from owners' non-performance.

All other terms and conditions are in accordance with the original C/P dated on 6th March, 2007 and addendum no.1 thereto dated on 5th July, 2007

We look forward to owners' performance of the next voyage without causing further problem.

==unqte==


B.RGDS / SUNHILL CHARTERING CO.,LTD
HANA KIM (MOB +82-11-9373-2500)

unqte

B.RGDS /SUNHILL CHARTERING CO.,LTD
CH KIM (MOB +82-17-242-1014)

EXHIBIT "7"

페이지 1/2

Juana Lee

보낸 사람:    "SUNHILL CHARTERING" <sunhill@sunhillchart.kr>
받는 사람:    "JH SHIP" <bb3@jhship.kr>
보낸 날짜:    2007년 10월 30일 화요일 오후 4:58
제목:       M.V. KRYMCHAKHLAR / JH SHIPPING – 18TH HIRE

SUNHILL CHARTERING CO.,LTD, SEOUL
TEL: +82 2 3276 3762
FAX: +82 2 3276 3763
E-MAIL: sunhill@sunhillchart.kr

SJ LEE/ HANA KIM

Good day
rcvd foll fm owns

==qte==

RE: M.V.KRYMCHAKLAR / JH SHIPPING

FOLL FROM OWNERS VICTORY SHIPPING

QUOTE:-
To: Exodus Chartering Services

Dear Mr. Manuel,

Pls pass below msg to Chrtrs.

We refer to our previous correspondence.

We have still not received all of the outstanding hire payment and in these
circumstances we are withdrawing the vessel pursuant to our rights under
clause 5 and/or clause 30. Consequently, the Charterparty is now at an end.

However, we are prepared to enter into a new charter with you, on the same
terms (including the same hire rate) as the charter which has just been
terminated, except that the vessel is to be redelivered after completion of
the present voyage. This will enable you to complete the voyage.

Please confirm in principle that you agree and we shall prepare a short
agreement for your approval. We confirm that such an agreement will be
without prejudice to both parties' rights to bring claims arising under or
out of the Charterparty which we maintain we have just terminated.
Consequently there would be no prejudice to you in entering into such an
agreement and you will be failing in your obligations to mitigate your
damages if you refuse to do so.

Rgds
Victory Shipping

==unqte==

B.RGDS / SUNHILL CHARTERING CO.,LTD
HANA KIM (MOB +82-11-9373-2500)

2007-11-01

----- Original Message -----
From: "S.J. Lee" <sjlee@jhship.kr>
To: "SUNHILL CHARTERING" <sunhill@sunhillchart.kr>
Sent: Monday, October 29, 2007 5:45 PM
Subject: MV KRYMCHAKHLAR / JH SHIPPING - 16TH HIRE

> TO : SUNHILL CHARTERING / MS. Y M SEO
> FM : J H SHIPPING
>
> Re: MV KRYMCHAKHLAR / JH SHIPPING - 16TH HIRE
>
> FURTHER TO CHTRS' HIRE SOA OF THIS MORNING, PLS REFER TO ATTACHED BANK
SLIP FOR THEIR ADDITIONAL 16TH HIRE PAYMENT.
> AS PER GOVERING C/P CL. 5, CHTRS'RE ENTITLED TO DEDUCT BOD VALUE AS
WELL AS USD 500 PER PORT AS OWNRS' EXP FM "LAST SUFFICIENT HIRE PAYMENT".
> FURTHER HIRE, IF NEEDED ANY, WB ARRANGED IN DUE COURSES AS PER C/P.
>
> PLS CNFM SAFE RECEIPT OF CHTRS' 16TH HIRE PAYMENT.
>
> FYG, SUBJ VSL IS TO BERTH AT VISAK O/A TONITE WITH ETCD AM 30TH, IF AGW
WP
>
> MEANTIME, WE'RE STILL WAITING FOR OWNRS' CLEAR REPLY ON FLWGS
>
> QTD
>
> PLS CNFM IF AFTER COMPLETION OF PRESENT VOYAGE, CHARTER WILL BE
CONTINUED AS PER GOVERNING C/P DD 6TH MARCH 2007 AND ADDENDUM DD 9TH
JULY 2007 THERETO.
> IF OWNRS STILL ARE TO TAKE VSL AFTER PRESENT VOYAGE DEPRIVING
CHARTERERS OF USE OF THE VSL FOR REMAING PERIOD, PLS CONFIRM WHEN AND
HOW TO SETTLE CHTRS' LOSS OF EARNING ARISING FM OWNRS' REPUDIATORY
BREACH OF THE CHARTER. IN VIEW OF PREVAILING MARKET SITUATION, CHTRS'
LOSS OF EARNING IS ESTIMATED OVER USD2 MILLIONS.
>
> UNQTD
>
> IF OWNRS CNFM THAT CHARTER WB CONTINUED, CHTRS WL REFUND RESERVED
BUNKER VALUE IMMEDIATELY.
>
> TKS N B.RGDS / SJ LEE
> J H SHIPPING CO., LTD
> ==========================
> - TEL : 82) 2-2135-2003
> - FAX : 82) 2-2135-2008
> - TLX : K35200 JHSHIP
> - MOB : 82) 10-9855-4742
> - E-MAIL : biz3@jhship.kr
>
>

EXHIBIT "8"

페이지 1/3

## Juana Lee

보낸 사람:   "S.J. Lee" <sjlee@jhship.kr>
받는 사람:   "SUNHILL CHARTERING" <sunhill@sunhillchart.kr>
보낸 날짜:   2007년 10월 31일 수요일 오후 3:50
제목:       Re: MV. KRYMCHAKHLAR / JH SHIPPING

TO : SUNHILL CHARTERING / MS. Y M SEO
FM : J H SHIPPING

Re: MV. KRYMCHAKHLAR / JH SHIPPING

Charterers refer to Owners notice of withdrawal. Charterers reject the notice as being misconceived and invite Owners to continue to perform the charter. Charterers have done no more than deduct redelivery bunkers from hire as per their entitlement pursuant to c/p terms. All hire due has been paid in full. The deduction for bunkers on redelivery is entirely lawful. Accordingly, termination of the charter by Owners is wrongful. Owners are requested to reconsider their position and to promptly confirm that the charter remains on foot and that the purported withdrawal is itself withdrawn. Charterers reserve all of their rights.

TKS N B.RGDS / SJ LEE
J H SHIPPING CO., LTD

- TEL : 82) 2-2135-2003
- FAX : 82) 2-2135-2008
- TLX : K35200 JHSHIP
- MOB : 82) 10-9855-4742
- E-MAIL : biz3@jhship.kr

----- Original Message -----
From: SUNHILL CHARTERING
To: JH SHIP
Sent: Wednesday, October 31, 2007 2:25 PM
Subject: MV. KRYMCHAKHLAR / JH SHIPPING - 16TH HIRE

SUNHILL CHARTERING CO.,LTD, SEOUL
TEL: +82 2 3276 3762
FAX: +82 2 3276 3763
E-MAIL: sunhill@sunhillchart.kr

SJ LEE / HANA KIM

Good day
rcvd foll fm owns

==qte==

2007-11-01

EXHIBIT "9"

2007-11-02  16:12  FROM:JH SHIPPING 21352008                TO:21352008              P:1/1

## M/V "KRYMCHAKHLAR"
## TIME CHARTER TRIP AGREEMENT DATED 01st NOVEMBER 2007.

IT IS ON THIS DAY ( 01st NOVEMBER 2007) THE FOLLOWING TIME CHARTER TRIP AGREEMENT HAS BEEN MUTUALLY AGREED BETWEEN M/S VICTORY SHIPPING SDN BHD, MALAYSIA ( AS "OWNERS ") AND M/S JH SHIPPING CO. LTD., SEOUL, KOREA [ AS "CHARTERERS " ) THAT

OWNERS HEREBY AGREE TO LET THE VESSEL MV KRYMCHAKHLAR TO THE CHARTERERS FOR A SINGLE TIME CHARTER TRIP EX. INDIA TO CHINA, ON FOLLOWING TERMS :-

1. DELIVERY IN DIRECT CONTINUATION OF THE TERMINATED CHARTER PARTY AT 0758 HRS UTC 30TH OCTOBER 2007.

2. REDELIVERY AT THE END OF THE CURRENT VOYAGE FOR WHICH THE VESSEL IS LOADING IN INDIA AFTER DISCHARGE AT DLOSP 1SP CHINA PORT.

3. CHARTER HIRE PER DAY USD 21,000 DIOT
   C/E/V : USD 1200 PM
   ILOHC : USD 3500
   TTL COMM : 3.75 PCT
   OTHER TERMS AS PER THE EXECUTED NYPE CP DTD 6TH MARCH 2007, WHICH TERMINATED AT 0758 HRS UTC 30TH OCT 2007.

4. CHRTRS TO TAKE OVER BUNKERS AS ON BOARD AT TIME OF DELIVERY AND REDELIVER WITH SAME QTY AS ON DELIVERY. NO PAYMENT IN ADVANCE. BUNKER S ON DELIVERY IFO 298 MT , MGO/42.2 MT .
   BUNKER PRICES AS FOLLOWS : IFO/USD 495 PMT & MGO / USD 746 PMT
   OWNERS TO HAVE THE OPTION OF BUNKERING ADDITIONAL QTY DURING THE CHARTER PROVIDED THAT THERE IS NO LOSS OF TIME OR ANY INTERRUPTION TO CHRTRS BUSINESS.

5. FIRST HIRE FOR PERIOD OF 10 DAYS TO BE PAID IN ADVANCE ON EXECUTING THIS AGREEMENT . BALANCE HIRE TO BE PAID IN ADVANCE FOR THE NO. OF DAYS TILL REDELIVERY, MUTUALLY AGREED.

THIS AGREEMENT WILL BE WITHOUT PREJUDICE TO BOTH PARTIES' RIGHTS TO BRING CLAIMS ARISING UNDER OR OUT OF THE TERMINATED CHARTER PARTY.

FOR AND ON-BEHALF OF OWNERS
M/S: VICTORY SHIPPING SDN BHD ,
MALAYSIA

FOR AND ON BEHALF OF CHARTERERS
M/S: JH SHIPPING CO., LTD.,
SEOUL, KOREA